Argued November 2, 1978, affirmed April 24, 1979

LAUBACH, *Respondent,*
*v.*
INDUSTRIAL INDEMNITY COMPANY,
*Appellant.*
(No. 7608 11828, SC 25412)
593 P2d 1146

[218]

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Wayne A. Williamson, Portland, and Elizabeth K. Reeve, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland, and Jan Thomas Baisch, Portland.

Before Denecke, Chief Justice, and Howell, Lent and Linde, Justices.

LENT, J.

## LENT, J.

Defendant appeals from a judgment on a jury verdict in this action for damages for personal injuries suffered by plaintiff when an automobile slipped off its jack and fell on his chest. We affirm.

Defendant was the employer of the motorist plaintiff was assisting when the "accident" occurred.[1] Defendant's motions for nonsuit and for a directed verdict were denied, and the jury returned a verdict finding negligence of both parties caused the "accident." The judgment appropriately takes into account plaintiff's "37%" negligence. Defendant appeals, asserting that the trial court erred in refusing to grant defendant's motions for nonsuit and a directed verdict, in refusing to give certain instructions requested by defendant, and in submitting to the jury plaintiff's requested special interrogatories on comparative negligence.

■ In reviewing the trial court's denial of a motion for a nonsuit, we view the evidence in the light most favorable to the plaintiff, giving plaintiff the benefit of all favorable inferences that may be drawn from the evidence. *Hendrix v. McKee*, 281 Or 123, 125-26, 575 P2d 134 (1978). We cannot set aside a jury verdict unless we can "affirmatively say there is no evidence to support the verdict." Oregon Constitution, Amended Article VII, § 3.

The evidence will support the following findings. Vivian Sloan, defendant's employee, was attempting to drive without chains through a snow storm near Pendleton on January 5, 1976. Her car slid off the highway and came to rest against a snow bank on the right side of the road. Plaintiff, Raymond Laubach, stopped to help her. A Mr. Courder, not a party to this case, was also present. The three attempted to put chains on Sloan's tires but were hindered by rust on

---

[1] Defendant does not challenge the applicability of the respondent superior doctrine to this case.

the chains that kept the safety snaps from unhooking. Plaintiff decided to jack up the car and crawl underneath the car to put the chains on. With its base plate attached, the jack slipped on the ice and snow so plaintiff decided to poke the jack in the snow, using the snow as support. He jacked up the car in this way and told Sloan to hold the car to balance it while he crawled underneath. Plaintiff testified that Sloan did then hold the car and that her task did not involve strength, as much as balance. The three managed to get the right side chain on and used the same method for the left. Courder also steadied the car initially but let go of it to help plaintiff with the left chain. While plaintiff was under the car and Courder was helping him, Sloan let go of the car. The car, lacking balance, then slipped sideways off the jack, injuring plaintiff.

■   Defendant submits both legal and factual arguments in support of its contention that the above-stated facts are not sufficient to get to the jury. The apparent legal argument is that Sloan had no duty either to hold the automobile in the air or "to impede or shift its momentum once the car began sliding" because she was physically unable to perform either task. Defendant does not cite to the transcript in support of its contention as to Sloan's strength. Apparently defendant thinks we should take judicial notice of the matter. For the sake of argument, we might be willing to take judicial notice of Sloan's inability to hold up one end of the car unassisted. We need not do so, however, because plaintiff never contended that Sloan should have held up the car. Instead, plaintiff testified that Sloan undertook to balance the car on the jack and that *that task* did not require great strength.[2] In the absence of some evidence that Sloan

_____

[2] Throughout its brief, defendant argues as if plaintiff's theory were that Sloan was negligent in failing to hold up the car unassisted by the jack or anything else. We wish to emphasize that the only theory of plaintiff's that went to the jury was his charge that Sloan undertook to "secure the automobile in a safe fashion" and performed that task negligently.

was particularly weak, the jury could have concluded that she possessed sufficient strength to balance (not lift) the car. Thus, defendant's argument based on physical impossibility must be rejected.

■ Defendant also argues that Sloan had no duty to "secure the automobile as a matter of law because she would have been contributorily negligent in attempting to do so," citing *Cramer v. Mengerhausen*, 275 Or 223, 550 P2d 740 (1976). In *Cramer* we held that a jury could find a person contributorily negligent in attempting to grab and hold a pickup truck when it was slipping off a jack when he knew that it was physically impossible for him to do so. In this case, however, as stated above, there was evidence from which the jury could have found that the task Sloan undertook required not strength, but balance and attention to the task; thus, *Cramer* is not on point.

Defendant argues that there was no evidence to support the submission of the case to the jury. We disagree. As to duty, the evidence could support a jury conclusion that Sloan undertook to balance the car on the jack at plaintiff's request. Although Sloan may not have had a duty to assist plaintiff, once she undertook to do so she had a duty to do so with due care. See W. Prosser, Torts 343-48, § 56 (4th ed 1971). Defendant argues that Sloan "never expressly promised to hold up or steady the car as plaintiff crawled underneath." This is true. However, plaintiff asked her to steady the car and she did so, which permits the inferences that Sloan *implicitly* undertook to steady the car and that plaintiff understood her to have done so. There was sufficient evidence of duty.

■ As to breach, plaintiff's testimony in his deposition, which was read into evidence by defendant at trial,

It should also be noted that even if Sloan did *not* have the strength to steady the car, her attempt to do so might have been negligent had she known or reasonably should have known of her incapacity. We will not dwell on this point, however, because the parties have not discussed it.

was that Sloan "let loose of the car * * *." The jury could certainly have found such conduct to be a breach. On this matter, however, there is a technical complication. Defendant contends that it read the plaintiff's deposition testimony into the record only for impeachment purposes and, therefore, the testimony could not be considered by the jury. However, defendant never informed the court that it was offering the deposition *only* for impeachment purposes nor did it request a limiting instruction on the point. The only reasonable ground that we can see for refusing to give substantive weight to the deposition testimony is that it is hearsay,[3] but when such testimony is received without objection it is competent evidence sufficient to support a verdict. *Kelley v. Light*, 275 Or 241, 243, 550 P2d 427 (1976); *Smith v. J. C. Penney Co.*, 269 Or 643, 649, 525 P2d 1299 (1974). There was sufficient evidence to support a finding of breach.[4]

■ Defendant next contends that there was insufficient evidence of "proximate cause," by which it apparently means cause in fact.[5] We believe that the jury could have concluded that Sloan's letting go of the car was a cause in fact of the car's slipping off the jack. Defendant here presents another argument based on Sloan's lack of strength; namely, that even if she had held the car, she could not have stopped its slipping once it began to slip. Thus, her letting go of the car was irrelevant to its falling. However, in light of plaintiff's testimony that holding the car was more a matter of balance than of strength, this was a jury question.

[3] This case is, of course, unusual in that the proponent of the evidence unwittingly aided its adversary in putting the evidence in. However, we are not aware of any rule of law forbidding such conduct.

[4] The defendant cites *Stroda v. State Highway Comm.*, 22 Or App 403, 416-20, 539 P2d 1147, *review denied* (1975), to the contrary. In that case, the Court of Appeals only held that evidence introduced purely for impeachment against one defendant could not be used as substantive evidence against *other* defendants. *Stroda* is thus distinguishable but if it implies a result contrary to the one we reach here, we disapprove it.

[5] We have rejected the term "proximate cause." *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 555, 588 P2d 4 (1978).

Further, it might well be, as defendant contends, that the car started to fall because of plaintiff's tugging and pulling on the tire chains. However, the jury could also have found that had Sloan held the car, plaintiff's tugs would not have sufficed to pull the car off the jack. There was sufficient evidence to support a finding of cause in fact.

Defendant's next assignments of error have to do with instructions requested by defendant but refused by the trial judge. Three of the requested instructions were on comparative negligence: Defendant's Requested Instruction No. 4:

> "The defendant has charged the plaintiff with negligence in failing to maintain a proper or any lookout for his own safety. I instruct you that the plaintiff, at the time of the accident, was required to use his senses and to maintain a lookout to observe dangerous conditions, if any. If he failed to make ordinary and unreasonable (sic) use of his senses and to maintain a proper lookout under all the evidence and surrounding circumstances in this case he would be negligent in that respect."

Defendant's Requested Instruction No. 5:

> "Plaintiff is also charged with negligence in failing to secure the base of the jack before attempting to jack up the automobile. It will be for you to determine under the evidence and the instructions that I have given you as to whether or not plaintiff was negligent in that respect."

Defendant's Requested Instruction No. 6:

> "Plaintiff is also charged with negligence in crawling underneath the automobile after it had been jacked in the air, thereby exposing himself to the hazard of the vehicle falling off the jack. This, again, is a question for you to determine under the evidence and the instructions that I have given you. In other words, was the plaintiff negligent in this respect judged by the standard as to what a reasonably prudent person would have done under the same or similar circumstances."

[223]

However, the trial court gave instructions as follows:

"In her answer, Defendant * * * goes on to allege that at the time and the place of the accident the Plaintiff himself was negligent in some three particulars. Failing to maintain a proper lookout for his own safety, in failing to secure the base of the jack before attempting to jack up the automobile, and in crawling underneath the automobile after it had been jacked into the air thereby exposing himself to the hazard of the vehicle falling off the jack.

"* * * * *.

"* * * [I]n order for the Defendant to prevail on the claims of contributory negligence it must prove by a preponderance of the evidence that the Plaintiff was negligent in at least one respect charged in the Answer.

"Now, in general it is the duty of every person in our society to use reasonable care in order to avoid damage to himself or another person in any situation in which it could be reasonably anticipated that a failure to use such care might result in such damage.

"Reasonable care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or others.

"Common law negligence—and this is a common law negligence case—therefore, is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do, under the same or similar circumstances.

"When you make this determination you should not make it on the basis of hindsight, because we all see quite well backwards. You have to make it on the basis of conditions as they existed at the time and place of the alleged acts.

"I mentioned to you the various claims of negligence made by the Plaintiff against the Defendant and the Defendant in turn against the Plaintiff. You have to look at those claims and test them by the evidence against the instructions I have just given you defining what common law negligence is. You

[224]

have to decide first of all whether or not the alleged act or omission occurred and if you find that the omission or act occurred or didn't occur, then you have to determine whether or not the party against whom the claim is made was acting as a reasonable, prudent person under the circumstances at that time.

"* * * * *"

It is not error for a trial court to refuse to give requested instructions that are given in substance, *Simpson v. Sisters of Providence, supra* at 563, or that are merely enlargements upon instructions given, *Myers v. Cessna Aircraft*, 275 Or 501, 528, 553 P2d 355 (1976). Defendant argues that these rules do not apply in this case because the given instruction did not cover all the points covered by the requested instructions. Defendant asserts that the given instruction did not tell the jury that *it could find* plaintiff negligent in doing or failing to do the various acts, but instead only told the jury that defendant had alleged that plaintiff was negligent in those particulars. In light of the fact that the jury *did* find plaintiff substantially at fault ("37%" negligent), we see no likelihood that the trial court's choice of words harmed defendant in any respect. The jury must have understood the court's instructions to allow them to find plaintiff negligent in the three ways argued by defendant.

Similarly, the trial court did not err in failing to give the following requested instruction:

"The fact the Court has instructed you upon the subject of damages does not mean the Court is of the opinion that plaintiff or defendant is entitled to recover in this case. The Court is obliged to instruct you in all phases of the case and expresses no opinion on the subject as to whether or not you should or should not award damages."

The trial court instructed:

"Ladies and gentlemen, it now becomes the court's duty to instruct you as to the law you should apply in the course of your deliberations. * * * I am going to, of course, talk about the law of negligence and damages.

[225]

* * * The fact that I am instructing you in any of these areas is not intended by the Court to be a suggestion that you decide any issue or the case itself in a particular way. * * *"

Although the given instruction was not as specific as defendant would have liked, it was adequate to inform the jury on the point and so the court did not err in refusing to give the requested instruction.

Defendant's final assignment of error is that the trial court erred in submitting to the jury plaintiff's verdict and special interrogatories form because it was untimely filed. Plaintiff filed the form after closing arguments. The court submitted the form to the jury with oral instructions on how to fill it out.[6] Defendant argues that the trial court abused its discretion in accepting the form after closing argument, contending that its action prejudiced defendant by not giving defense counsel the opportunity to explain its use to the jury. Defendant does not contend that the form actually would have confused the jury nor does it have any quarrel with the trial court's explanation of how to use the form. Although it would have been better for plaintiff to have submitted the verdict form earlier on, we conclude that defendant was not prejudiced by the later submission of the form in this case.

Because none of defendant's assignments of error are well taken, we affirm the judgment. This disposition of the case makes it unnecessary for us to consider plaintiff's cross-assignments of error.

Affirmed.

---

[6] The court acted according to ORS 18.480, which provides:

"When requested by any party the trier of facts shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not be at fault;

"(b) The degree of each party's fault expressed as a percentage of the total fault attributable to all parties represented in the action."