Argued and submitted July 15, 1988, affirmed March 22, 1989

# ANDERSON,
*Petitioner,*

*v.*

# BOARD OF MEDICAL EXAMINERS,
*Respondent.*

(CA A45921)

770 P2d 947

Samuel A. Abady, New York, New York, argued the cause for petitioner. With him on the brief were Abady & Jaffe, New York, New York, and Matthew G. Dineen and Margolin & Margolin, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

DEITS, J.

## DEITS, J.

Petitioner seeks review of the Board of Medical Examiner's order revoking her license to practice medicine. The order was based on ORS 677.190(18) and (23), which provide, respectively, that a revocation may be based on a physician's:

"(18) Wilfully violating any provision of this chapter or any rule adopted by the board.

"* * * * *

"(23) Refusing an invitation for an informal interview with the board requested under ORS 677.415."

The basis for the Board's conclusion that petitioner violated ORS 677.190(18) was that she had failed to comply with a subpena *duces tecum* issued pursuant to ORS 677.320. The Board based its finding of a violation of ORS 677.190(23) on the fact that petitioner was guilty of the precise conduct described in that statute.

The proposed order of the hearings officer contained a "special conclusion of law" that the Board adopted, recommending revocation for each statutory violation and stating that "it is the Board's intent that either one or both shall support the Board's order herein." Given that conclusion, we need not address petitioner's assignments that relate solely to ORS 677.190(18), because the revocation under ORS 677.190(23) was not erroneous in any way that petitioner contends, and it independently sustains the order.

■ Petitioner makes three arguments challenging the Board's conclusion and its proceedings culminating in the conclusion that she had violated ORS 677.190(23). The first is that the Board was required to follow contested case procedures instead of requesting the informal investigatory interview that she did not attend.[1] She reasons that the Board had conducted a previous informal interview with her regarding the same complaints, as well as three earlier ones about her practice methodologies; that the Board's approach had become "adversarial" and "had assumed the character of a

---

[1] ORS 677.200(2) requires the Board to conduct revocation and suspension proceedings in accordance with ORS 183.310 to ORS 183.550. The Board did conduct a contested case in connection with this revocation proceeding.

'contested case' for all intents and purposes"; and that the "proceedings had progressed to the point where they were, or would imminently become, disciplinary."

As far as the record reveals, the informal interview was to be investigatory rather than disciplinary in nature, and contested case procedures would not have been required. *See* ORS 677.415; *Davidson v. Oregon Government Ethics Comm.,* 300 Or 415, 712 P2d 87 (1985). Because the interview did not take place, there is no way for us to conclude that it would have turned out to be anything other than the investigatory proceeding that it purported to be. If there had been an interview and, as petitioner speculates, the stated nature of the proceeding turned out not to be its real one and the Board had conducted a *de facto* contested case, petitioner could have obtained redress by petitioning for judicial review and assigning error to the interview proceeding after the Board issued a reviewable order. *See Patton v. St. Bd. Higher Ed.,* 293 Or 363, 647 P2d 931 (1982). Arguably, she also could have brought a pre-interview proceeding under ORS 183.490, seeking to compel the Board to follow contested case procedures. However, she did none of those things.[2] In essence, petitioner asks us to reverse the Board's order on the basis of hypothetical errors that she postulates would have occurred in connection with a proceeding that did not take place because she prevented its occurrence. We cannot share her assumption that error would have been committed, and we cannot agree that petitioner was entitled to avoid the interview on the basis of her predictions of what would have happened at it. We therefore reject her first argument concerning the revocation under ORS 677.190(23).

■  Petitioner also argues that, under ORS 677.415(3), the Board only has the authority to conduct one informal interview and that it exceeded that authority, because it had required her to attend four earlier interviews. ORS 677.415 provides:

"(1)  The board on its own motion may investigate any evidence which appears to show that a licensee licensed by the

---

[2] On the day that the interview was scheduled, petitioner brought a circuit court action, seeking a restraining order and declaratory and other relief. That action did not follow the requirements of ORS 183.490. *See McBeth v. Elliott,* 42 Or App 783, 601 P2d 871 (1979).

board is or may be medically incompetent or is or may be guilty of unprofessional or dishonorable conduct or is or may be mentally or physically unable safely to engage in the practice of medicine or podiatry.

"(2)   Any health care facility licensed under ORS 441.015 to 441.087 and 441.820, any licensee licensed by the board, the Oregon Medical Association, Inc., or any component society thereof, the Osteopathic Physicians and Surgeons of Oregon, Inc. or the Oregon Podiatric Medical Association shall, and any other person may, report to the board any information such licensee, association, society or person may have which appears to show that a licensee is or may be medically incompetent or is or may be guilty of unprofessional or dishonorable conduct or is or may be mentally or physically unable safely to engage in the practice of medicine or podiatry.

"(3)   If in the opinion of the board it appears such information provided to it under provisions of this section is or may be true, the board may request an informal interview with the licensee."

Nothing in the statute supports petitioner's understanding that the Board is limited to one interview in the course of investigating a licensee. The information that can give rise to an interview request does not necessarily or invariably reach the Board in one unit or at one time. Moreover, as the Board states in its brief:

"In addition to refusing to honor the Board's subpena, petitioner refused to answer numerous questions at the [earlier informal] interview on advice of counsel, and promised to provide information which was never produced. * * *

"At the [revocation] hearing petitioner asserted that the Board could not summon her for a second interview because it should have completed its investigation at the first interview. Petitioner's position is intractably self-contradictory. On the one hand she asserts the right to frustrate the Board's investigation by refusing to provide documents or answer questions, while on the other she claims that the investigation should have been completed in one session. * * * [P]etitioner's position, if sustained, would eviscerate the Board's investigatory authority. This court should reject it."

We agree.

Petitioner also argues that there was no substantial evidence to support the Board's finding that she "wilfully"

failed to appear for the interview. This argument is without merit. There clearly was substantial evidence.

■     Petitioner makes a number of other arguments that bear on the process as a whole, rather than relate to either of the two statutory revocation grounds particularly. None of those arguments requires specific discussion. Explicitly or implicitly, petitioner's overriding contention is that she should not have been subjected to sanctions, or at least not revocation, because of violations of investigatory requirements, when there was no determination on the merits that the substantive complaints against her were well taken. She also portrays herself as the victim of a vendetta, motivated by differing philosophies and approaches to patient care. However, as the Board aptly states in its brief:

> "The petitioner presents this case as an attack by the medical establishment on a courageous, progressive practitioner who dares to transcend orthodoxy. If the Board ever acquired sufficient evidence to make an informed judgment respecting the petitioner's treatment of the four patients under investigation in this case, it might counter that she employs dangerous and experimental treatments that jeopardize her patients' health and well-being. Historically, such controversies are not uncommon. In some cases outrageous quackery has been inflicted on gullible victims. In others, pioneers struggled against benighted entrenched interests. This, however, is not the trial of Galileo. Rather, it is an administrative proceeding which tests whether a licensee may systematically defy, delay and frustrate an investigation by the Board, the agency which the legislature has charged with the protection of the public against harmful medical practices."

ORS 677.190(23) specifies that a failure to cooperate with a Board investigation in exactly the way that petitioner did is a ground for revocation. Had the legislature not so provided and had it created only "substantive" grounds for revocation, the Board's ability to revoke a license would often be dependent on the outcome of an investigation that the licensee could impede or prevent. Agency investigations and disciplinary proceedings could be and sometimes might have been instruments of harassment and other evils. The law provides remedies for such agency misconduct. However, it does not allow a licensee to use self-help of the kind that petitioner indulged in here. The effect of her doing so was to frustrate the

agency's performance of its responsibilities *and* to prevent a record from being made and procedures from becoming available by which petitioner's assertions against the agency could be tested.

Affirmed.