Argued and submitted July 31, 1989, affirmed March 21, reconsideration denied
June 27, petition for review allowed July 31, 1990 (310 Or 205)

# REGUERO,
*Petitioner,*

*v.*

# TEACHER STANDARDS AND PRACTICES COMMISSION,
*Respondent.*

## (TSPC No. 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; CA A48106)

789 P2d 11

Barbara J. Diamond, Portland, argued the cause for petitioner. With her on the brief were Mark Toledo and Durham, Drummonds, Smith & Wiser, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Newman, Judge.

## NEWMAN, J.

Petitioner seeks review of the Teacher Standards and Practices Commission's modified order,[1] denying his application for reinstatement of his teaching certificate. The denial arose out of petitioner's conduct toward female students in his sixth grade classes. That course of conduct allegedly culminated in an episode in which petitioner fondled the breast and vaginal area of a student while the two were in petitioner's classroom after school hours.[2]

Under ORS 342.143, the Commission may "require an applicant for a teaching certificate to furnish evidence satisfactory to the Commission of good moral character * * * and such other evidence as it may deem necessary to establish the applicant's fitness to serve as a teacher." The statute does not expressly make an applicant's lack of good moral character a ground for denying a certificate. Although the Commission has general rulemaking authority, ORS 342.165, it has not adopted rules to make lack of good moral character a ground for denial of a certificate or that define what constitutes good moral character. The Commission has promulgated rules that allow it to deny a certificate to an applicant who is "charged with gross neglect of duty," OAR 584-20-040(2)(c), or with "gross unfitness." OAR 584-20-040(2)(d). Gross neglect of duty includes "any sexual contact with a student." OAR 584-20-040(3)(f). Gross unfitness includes the commission of an act constituting sexual abuse in the second degree. OAR 584-20-040(4)(d); *see* ORS 163.415; OAR 584-20-040(1).

The Commission made these conclusions:

"1.   ORS 342.143 provides that the Commission may require an applicant for certification to produce evidence of good moral character.

"2.   OAR 584-20-040 provides that the Commission shall deny a certificate to any person charged with gross neglect of duty or gross unfitness.

"3.   Petitioner's repeated acts of inappropriate contact with

---

[1] The Commission withdrew and reconsidered its original order after petitioner sought our review of it. ORS 183.482(6).

[2] After the alleged incidents occurred, petitioner was discharged by the school district that had employed him.

female students, his discussion of inappropriate sexual topics, and his employment of sexually suggestive words, gestures, and expressions constitute gross neglect of duty and a serious and material breach of professional responsibilities. Petitioner's actions demonstrate a serious failure to employ professional judgment in violation of OAR 584-20-010(5). This conduct also constitutes gross unfitness.

"4. Petitioner's sexual contact with [the student in the fondling incident] constitutes gross neglect of duty and gross unfitness.

"5. Petitioner is guilty of gross neglect of duty and gross unfitness based on his efforts to persuade female students from his class, including [the same student], to withdraw the allegations against him. This conduct also violates OAR 584-20-035(1)(b) which requires an educator to refrain from exploiting professional relationships with any student for personal gain, or in support of persons or issues.

"6. Any of these specifications in paragraphs 3, 4, and 5 above, are [sic] sufficient alone to support the conclusion that Petitioner is guilty of gross neglect of duty and gross unfitness."

In the portion of the modified order captioned "order," the Commission "found" that petitioner

"lacks the good moral character to serve as teacher and to hold an Oregon Teaching Certificate. The lack of good moral character is evidenced by [petitioner's] in-school and school-related conduct which the Commission finds fails to meet the standards of OAR 584-20."

Petitioner contends that the Commission has not defined or expressed its interpretation of the statutory term "good moral character," either by rule or in its modified order. Although the Commission did conclude that petitioner was guilty of gross unfitness and gross neglect of duty, as defined by its rule, petitioner maintains that the ultimate ground for the Commission's disposition was the undefined "good moral character" statutory term. According to petitioner, therefore, we must reverse the order and remand it to the Commission "to set out a standard of good moral character and to apply that standard to the facts herein." *See Ross v. Springfield School Dist. No. 19,* 300 Or 507, 716 P2d 724 (1986); *see also*

*Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985).

■    The Commission argues that its modified order provides an interpretation of the statutory term sufficient to satisfy *Ross v. Springfield School Dist. No. 19, supra.* We agree. It defines *lack* of good moral character by reference to the rule pertaining to gross unfitness and to gross neglect of duty, which the Commission found that petitioner violated. We conclude that the Commission thereby offered a "reasoned interpretation" of the statutory standard in its modified order. *Ross v. Springfield School Dist. No. 19, supra,* 300 Or at 518.[3]

Petitioner's next assignments assert that the Commission erred because students who complained about him were not called to testify but, rather, the Commission admitted police reports containing their allegations and received testimony from a police officer, a prosecuting attorney and a school official concerning the students' complaints and statements. Petitioner argues that the hearsay evidence was inadmissible and that, even if admissible, the hearsay evidence was not sufficient in itself to support the findings of sexual misconduct and that there was no other evidence to prove the misconduct. Petitioner urges that some evidence, other than hearsay or other evidence inadmissible in a civil or criminal trial, must be present in an administrative record to support an agency's finding of fact. *See Oregon Attorney General's Administrative Law Manual and Model Rules under the Administrative Procedures Act* 111-112 (1986).

ORS 183.450(1) provides that evidence is admissible in administrative proceedings if it is "of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs." In *Higley v. Edwards,* 67 Or App 488, 678 P2d 775 (1984), *disapproved on other grounds, Wiggett v. OSP,* 85 Or App 635, 640, 738 P2d 580, *rev den* 304 Or 186 (1987), we reiterated that hearsay evidence can be admissible under that test but that the proffered hearsay statement of a female prisoner that a deputy sheriff had subjected her to nonconsensual sexual contact was not admissible in the officer's discharge proceeding. We explained:

---

[3] The Commission argues, alternatively, that, because its rule permits the denial of a certificate for gross unfitness or for gross neglect of duty, both of which it found, "the reference to good moral character [in the modified order] is arguably surplusage."

"Carter was a prisoner and plaintiff was her jailer. She is a convicted felon. Her statement was unsworn. Other than her uncorroborated statement, no evidence was presented on the fact in issue, *i.e.*, whether there had been sexual contact. Plaintiff categorically denied Carter's accusation. Her credibility was the central issue in the case. * * *

"We conclude that the proffered evidence did not comport with the standard recognized in ORS 183.450(1). We hold that in a matter of this kind a reasonably prudent person would not rely on the unsworn and uncorroborated statement of a convicted felon. Therefore, it was error to receive evidence of Carter's statement." 67 Or App at 491.

The holding in *Higley* is simply that the particular hearsay statement was inadmissible because, as the unsworn and uncorroborated statement of a convicted felon, reasonably prudent persons in the conduct of their serious affairs would not rely on it. Hearsay evidence is not rendered inadmissible simply because it is offered in connection with a "central" or major question of fact. Nor is it rendered inadmissible because it depends for its reliability on the credibility of the person making the statement. As we said in *Glide School Dist. v. Carell*, 39 Or App 727, 732, 593 P2d 1224, *rev den* 287 Or 215 (1979):

"[T]he evidence was hearsay, but that objection alone would not require its exclusion in a contested case proceeding under the Administrative Procedure Act. See ORS 183.450(1). That is not to say, however, what weight [the agency] must accord such testimony."

The hearsay nature of evidence, therefore, may affect the weight that a factfinder chooses to give it, but does not in itself make it inadmissible. Similarly, the nonexistence of corroborating or independent evidence that tends to prove the same fact as the hearsay evidence is not a prerequisite to admissibility of the hearsay, but bears instead on the weight or sufficiency of the evidence offered. We conclude that the hearsay evidence of the students' statements is of a type commonly relied on by reasonably prudent persons in conducting their serious affairs, and it was properly admitted.

The question remains whether that hearsay evidence was sufficient to constitute substantial evidence in the whole record of any misconduct that there was no other evidence to

establish. Petitioner first argues generally that "uncorroborated" hearsay evidence, categorically, cannot be sufficient in itself to support an agency's findings. He relies on decisions from other jurisdictions adopting the "residuum rule." That rule is described in 3 Davis, *Administrative Law Treatise* 239, § 16.6 (2d ed 1980):

> "The residuum rule requires a reviewing court to set aside an administrative finding unless the finding is supported by evidence which would be admissible in a jury trial * * * no matter how reliable the evidence may appear to the agency and to the reviewing court, no matter what the circumstantial setting may be, no matter what may be the evidence or lack of evidence on the other side, and no matter what may be the consequences of refusing to rely upon the evidence."

Davis notes at the same page in the treatise that the rule "was once largely the law, but it is now largely abolished."

Petitioner asserts that it is a question of first impression in Oregon whether to adopt the residuum rule generally or a specific rule that makes hearsay insufficient to support an agency's finding when there is no other evidence probative of the fact. The court said in *Menges v. Bd. of Comm.*, 290 Or 251, 265, 621 P2d 562 (1980), however:

> "It is well established that at least when hearsay evidence is not objected to, as in this case, such evidence is 'competent evidence sufficient to support a verdict in an action at law.' *See Laubach v. Industrial Indemnity Co.*, 286 Or 217, 222, 593 P2d 1146 (1979), and cases cited therein. Similarly, in administrative proceedings, hearsay evidence is commonly received and accorded probative value, at least when received without objection, as in this case. *See* Davis, Administrative Law Text (3d ed 1972), § 14.05, p 276. *See also* ORS 183.450(1)."

That statement in *Menges* is not squarely controlling, because it pertains to the evidentiary support for an action by a local governing body, while the question here is the sufficiency of the evidence to support an agency finding under the Administrative Procedures Act. Similarly, the language in *Menges* relating to the absence of objection to hearsay evidence is not relevant to this case, because it presupposes that an objection to the hearsay would have been well taken; here, conversely, we have held that the evidence was admissible over petitioner's objections. Despite the distinctions, however,

the overriding point that the court made in *Menges* is equally—if not more—relevant in this context: If hearsay evidence is properly before a factfinder, the factfinder may rely on it to establish the fact that it tends to prove.

The residuum rule also assumes that hearsay and other evidence that is admissible in agency proceedings, but not generally admissible in judicial proceedings, is not sufficiently trustworthy to be substantial. Under Oregon's statutory scheme, however, the assumption is untenable. As noted earlier, ORS 183.450(1) makes hearsay and other evidence admissible in administrative hearings if it is "of a type commonly relied upon by reasonably prudent persons in conduct of their serious affairs." ORS 183.482(8)(c) defines substantial evidence to exist, for purposes of our review of an agency finding, "when the record, viewed as a whole, would permit a reasonable person to make that finding." The legislature could not have intended that a certain type of evidence, although reliable enough to be admissible under ORS 183.450(1), is categorically incapable of being substantial enough to permit a reasonable person to find in accordance with it under ORS 183.482(8)(c). We hold that hearsay evidence is not, *per se,* incapable of being "substantial evidence" under ORS 183.482(8)(c).

■ Petitioner also suggests that, independently of its hearsay nature, the proof did not constitute substantial evidence to support the Commission's specific findings against him. The Commission's third, fourth and fifth conclusions of law, quoted above, set forth independent alternative bases for the Commission's disposition. Therefore, if there was adequate evidentiary support for any one of them, petitioner's substantial evidence contentions must fail. *Anderson v. Board of Medical Examiners,* 95 Or App 676, 770 P2d 947 (1988), *rev den* 308 Or 608 (1989). Our review of the whole record satisfies us that there was substantial evidence to support the findings underlying one or more of the three conclusions.[4]

Petitioner's other arguments do not require separate discussion.

Affirmed.

---

[4] The dissent expresses doubts about whether we have considered countervailing evidence that detracts from the reasonableness of the findings. We have.

**JOSEPH, C. J.,** dissenting.

I dissent.

There is so much that is wrong or doubtful about the majority's opinion that I am hard put to know exactly where to begin. Therefore, I will begin with the part that is most certainly wrong. The majority says:

> "Petitioner also suggests that, independently of its hearsay nature, the proof did not constitute substantial evidence to support the Commission's specific findings against him. The Commission's third, fourth and fifth conclusions of law, quoted above, set forth independent alternative bases for the Commission's disposition. Therefore, if there was adequate evidentiary support for any one of them, petitioner's substantial evidence contentions must fail." 101 Or App at 34.

In *Garcia v. Boise Cascade Corp.,* 309 Or 292, 787 P2d 884 (1990), the substantial evidence test was reviewed. The test requires the court to

> "evaluate all the evidence to determine whether a reasonable person could have made the findings which the referee and the Board made on the evidentiary record. Instead, the court concluded that certain evidence supported findings different from those reached by the referee and that the referee (and the Board) thus erred. The Court of Appeals effectively has substituted its review of the evidence, contrary to ORS 183.482(8)(c). That was an incorrect application of the substantial evidence standard of review." 309 Or at 295.

The other side of that statement is that we must not simply determine whether there is evidence to support a finding but whether "a finding is reasonable in light of countervailing as well as supporting evidence." 309 Or at 295. I do not think that the majority has adhered to that process.

Although I continue to be hopeful that the Supreme Court will someday reconsider the theoretical underpinnings for cases like *Ross v. Springfield School Dist. No. 19,* 300 Or 507, 716 P2d 724 (1986), and *Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985), in the light of how agencies actually do their business, it never having been clear to me how an individual adjudication can establish either a policy or an interpretation of a statutory term, I do not really want to get involved in that, now or ever. However, I cannot go along with the majority in being satisfied, as it is, by the

Commission's having determined petitioner's *"lack* of good moral character by reference to the rule pertaining to gross unfitness and to gross neglect of duty." 101 Or App at 31. (Emphasis supplied.) The majority approves the sort of thinking that says, "I cannot define good taste, but I recognize bad taste." That might lead to good literary criticism, but I do not think it fair to make a person's career hang on it.

Although ORS 183.450(1) makes admissible in an administrative proceeding any evidence "of a type commonly relied upon by reasonably prudent persons in conduct [*sic*] of their serious affairs," the issue cannot be dealt with easily in this context. Assuming that the burden of proof was with the Commission, which is not clear under the provisions of ORS 342.143,[1] it does not seem that reasonably prudent (and well informed) persons would rely on hearsay if they knew that the actual speakers were available and were not presented so that their statements could be tested.

Even if the Commission did not statutorily have the burden of proof, it voluntarily undertook that burden. In any event, it ought not to be permitted *to rely entirely* on hearsay evidence, when it has it in its power to bring before it all of the actual participants. We need not adopt the "residuum rule" or create "a specific rule that makes hearsay insufficient to support an agency's finding when there is no other evidence probative of the fact." 101 Or App at 33. All we need say is that, if the party having the burden of proof can, but does not, produce direct evidence of the facts on which it relies, hearsay evidence, although admissible, is not substantial evidence.

I dissent.

---

[1] ORS 342.143 provides that the Commission may "require an applicant for a teaching certificate to furnish evidence satisfactory to the Commission of good moral character * * * and such other evidence as it may deem necessary to establish that applicant's fitness to serve as a teacher."