Argued and submitted February 25, affirmed May 11, reconsideration denied June 24, petition for review denied September 7, 1983 (295 Or 617)

# BETHEL SCHOOL DISTRICT, NO. 52, LANE COUNTY,
*Petitioner,*

*v.*

## SKEEN et al,
*Respondents.*

## (CA A25318)

663 P2d 781

Dennis W. Percell, Eugene, argued the cause for petitioner. With him on the brief was Luvaas, Cobb, Richards & Fraser, Eugene.

Robert D. Durham, Portland, argued the cause for respondent Patricia P. Skeen. On the brief were Jennifer Friesen, Liana Colombo and Kulongoski, Heid, Durham & Drummonds, Portland.

William F. Nessly, Jr., Assistant Attorney General, Salem, waived appearance for respondent Fair Dismissal Appeals Board.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

Bethel School District No. 52 seeks judicial review of an order of the Fair Dismissal Appeals Board (FDAB) reversing the district's dismissal of Skeen, a permanent teacher. We affirm.

The district voted to dismiss Skeen after dismissal was recommended by the superintendent because of alleged insubordination, inefficiency, inadequate performance and neglect of duty. Those allegations arose primarily out of several incidents that occurred over a period of four years and a plan of assistance instituted by the superintendant as a result of those incidents.

In 1976, Skeen threw a roll of tape which, according to the findings of FDAB,

> "* * * accidentally hit the cheek of a student. The student suffered no injury as a result of this incident. The teacher's version of the incident explains it as not an intentional act, and we find it may properly be regarded as an accident that the roll of tape struck the child's cheek."

In 1979, an incident occurred in which Skeen "removed a student from the classroom and placed the student at his desk out in the hall. She upset the desk in order to have the child pick up and clear out his messy desk." The third incident occurred in 1980, when Skeen, according to the FDAB's findings, "had a student with his back to a wall and in the course of raising his head to look him in the eye it was believed the student's head had hit the wall. The teacher's version of this incident was that she was not trying to harm the student, but wanted to impress upon him the necessity of his behaving."

In February, 1981, the superintendent recommended that Skeen be placed on an intensive plan of assistance that included a psychological examination, classroom performance goals and periodic evaluations. In July, 1981, the superintendent recommended Skeen's dismissal. The district concluded that Skeen had violated its policies regarding discipline in the three incidents described above and that she had failed and refused to comply with the plan of assistance in certain specified particulars. Those conclusions were the primary bases for the district's decision that Skeen should be dismissed.

Regarding the three incidents involving students, FDAB found:

"They do not of themselves establish a pattern of improper behavior on the part of the teacher, although the panel finds they did, in fact, happen. To the panel they were random events and not patterned, and, secondly, none resulted in physical injury to a student. They were not in keeping with the district's disciplinary policies and exhibited poor judgment on the part of the teacher."

FDAB determined that the facts that were found to be true and substantial did not support any of the grounds for dismissal, believing the teacher's explanations of the incidents involved. It further found that the plan of assistance was "far more complex than was required and involved factors too numerous and involved to be of any assistance in aid of the teacher's growth in the profession" and that evaluations of the teacher by the principal and assistant principal "were not carried out in a manner appropriate for teacher evaluations and, further, were not carried out in accordance with the established school district policies for such evaluations * * *." It ordered that Skeen's dismissal be set aside and that she be reinstated to her position as a permanent teacher.

Our review of the order is pursuant to ORS 183.482(8).[1] At issue here, however, is the scope of the authority of FDAB under ORS 342.905(5). The Supreme Court has recently addressed that question in *Ross v. Springfield School*

---

[1] ORS 183.482(8) provides:

"(8) (a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

*Dist. No. 19,* 294 Or 357, 657 P2d 188 (1982). ORS 342.905(5) provides in pertinent part:

"* * * The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal are true and substantiated. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts developed at the hearing that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. * * * The panel shall not reverse the dismissal if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal was unreasonable, arbitrary or clearly an excessive remedy. * * *"

The Supreme Court interpreted this statute to require that FDAB undertake three inquiries:

"* * * 1) whether the facts alleged are true and substantiated, 2) whether the facts are adequate to justify the statutory grounds cited, and 3) whether the sanction was arbitrary, unreasonable or excessive." 294 Or at 364.

In discussing the effect of the 1979 amendments to the statute the court stated:

"* * * [Respondents] read the 'unreasonable, arbitrary or clearly an excessive remedy' language as a limitation on FDAB power both to reverse a dismissal sanction *and* to determine whether petitioner's conduct constitutes the grounds cited. Under this analysis school boards, not the FDAB, are empowered to apply the statutory terms to particular facts and the FDAB cannot reach a contrary interpretation of the standards without first finding the school board interpretation arbitrary, unreasonable or excessive.

"We do not find the amendment so all encompassing. Both before and after the amendment the FDAB remains the agency responsible for interpreting the statute. The unchanged statutory mandate that the FDAB consider whether the 'facts * * * are adequate to justify the statutory grounds cited' compels this conclusion. The amendment serves to clarify that while the FDAB interprets the statute, this interpretative authority does not permit the FDAB to assess the propriety of the sanction imposed by the school board beyond determining if it is arbitrary, unreasonable or

excessive. Where the FDAB finds both that the facts surrounding the teacher's conduct are true and substantiated, and that the facts adequately justify the statutory grounds cited, the school board decision on the dismissal sanction, unless arbitrary, unreasonable or excessive, must stand." 294 Or at 362-63. (Footnote omitted.)

The parties here disagree about the application of *Lincoln County School District v. Mayer,* 39 Or App 99, 591 P2d 755, *rev den* 287 Or 215 (1979), after *Ross.* The district contends that FDAB must uphold the school district's determination that the facts are adequate to justify the statutory grounds unless "no reasonable school board" could so determine. That is the language used in *Mayer.* The Supreme Court, however, interpreted *Mayer* as requiring that FDAB defer to the school district only as to the propriety of the sanction of dismissal:

> "* * * *Mayer* reinstated the Lincoln County school board's decision to dismiss a permanent teacher on the grounds of inefficiency, insubordination, neglect of duty and inadequate performance. The FDAB had reversed the dismissal. Though finding the facts charged to be true and indicating that the facts justified the grounds for dismissal the FDAB disagreed with the school board that the teacher should be dismissed. *Mayer* interpreted the Fair Dismissal statutes to mean that the FDAB is empowered to conduct a *'de novo'* review of the facts, but so long as the facts justify the grounds cited for dismissal, that agency may engage in only deferential review of the school board's judgment concerning the dismissal sanction. * * *" 294 Or at 363.

The court went on to observe that the amendments to the Fair Dismissal statutes in 1979 were made with *Mayer* in mind and intended to codify the *Mayer* decision. The court concluded: "Nonetheless, the FDAB's duty independently to interpret the statutory grounds remains unchanged." 294 Or at 364.[2]

■ The district contends first that FDAB erred in concluding that the incidents of physical discipline found to have occurred did not furnish a reasonable basis for dismissal. However, FDAB never reached the question of the appropriateness of the sanction of dismissal. It determined that, although some

---

[2] Although the Supreme Court in *Ross* misinterpreted our decision in *Mayer,* it is the *Ross* decision that now controls.

of the facts relied upon by the district were true and substantiated, they did not justify the statutory grounds cited by the district. According to *Ross,* those determinations are the responsibility of FDAB. Our review of the order pursuant to ORS 183.482(8) is limited. Although reasonable minds might differ on whether the disciplinary incidents justify the statutory grounds for dismissal cited by the district, it is the responsibility of FDAB to interpret the statute. *See Ross v. Springfield School Dist. No. 19, supra.* We cannot say that FDAB's interpretation was erroneous.

■     The district also contends that FDAB erred in "finding" that the plan of assistance was too complex to be of assistance and that the evaluations conducted were not carried out appropriately and in basing its conclusions on those findings. First, there was evidence in the record to support FDAB's "findings" with regard to the plan of assistance and the evaluation process. It is not entirely accurate, however, to characterize the FDAB conclusions regarding the plan of assistance and evaluation process as findings of fact. FDAB was actually explaining the reason that it rejected certain of the evidence relied upon by the district to prove insubordination, neglect of duty, inadequate performance and inefficiency. Many of the directives Skeen was alleged to have refused to follow were contained in the plan of assistance. Much of the evidence of inadequate performance and neglect of duty was based on her failure to follow the plan and on the evaluations conducted. FDAB rejected much of the evidence presented by the district as unpersuasive and explained in detail its reasons for doing so. It is empowered by statute to undertake that determination, and we find no error.

■     Finally, the district contends that FDAB erred in concluding that the district failed to prove any of the statutory grounds for dismissal. As indicated above, FDAB explained the reasons that it rejected much of the district's evidence. It chose to believe the teacher and the expert evidence she presented regarding the plan of assistance and the evaluation procedure followed by the district. There was conflicting evidence regarding the teacher's conduct and performance, and FDAB was entitled, and in fact required, to resolve those conflicts. The fact that the conflicts were resolved against the district does not make the resolution error.

In conjunction with this contention the district argues that FDAB erred in failing to make specific findings regarding certain facts not related to the disciplinary incidents which the district found to be true and substantiated and which supported the charge of insubordination. We find no error. FDAB specifically stated that the evidence regarding the charge of insubordination was conflicting and that the teacher denied or satisfactorily explained the incidents involved. Although the form in which it was done was imprecise, we consider FDAB's detailed explanation for its rejection of the evidence based on the plan of assistance and the evaluation procedure and its acceptance of the evidence presented by the teacher sufficient as to the facts found to be true and substantiated by the district.

Affirmed.